IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

DARCIE A. HOBSON,              )
                              )      CASE NO. 3:14-cv-2576
              Plaintiff,       )
       v.                      )
                              )      JUDGE JEFFREY J. HELMICK
                              )
                              )      MAGISTRATE JUDGE
COMMISSIONER OF SOCIAL         )      KENNETH S. McHARGH
SECURITY ADMINISTRATION,       )
                              )      REPORT & RECOMMENDATION
              Defendant.       )

This case is before the Magistrate Judge pursuant to Local Rule 72.2(b). The issue before the undersigned is whether the final decision of the Commissioner of Social Security ("Commissioner") denying Plaintiff Darcie Hobson's ("Plaintiff" or "Hobson") applications for Supplemental Security Income ("SSI") benefits under Title XVI of the Social Security Act, 42 U.S.C. § 1381 *et seq.*, and for a Period of Disability and Disability Insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423, is supported by substantial evidence and, therefore, conclusive.

For the reasons set forth below, the Magistrate Judge recommends that the decision of the Commissioner be AFFIRMED.

## I. PROCEDURAL HISTORY

Plaintiff filed applications for Disability Insurance benefits and Supplemental Security Income benefits on July 29, 2011, alleging disability due to COPD, chronic bronchitis, and emphysema, with an onset date of March 20, 2011. (Tr. 222). The Social Security

Administration denied Plaintiff's applications on initial review and upon reconsideration.  (Tr. 113, 117, 123).

Plaintiff requested that an administrative law judge ("ALJ") convene a hearing to evaluate her applications.  (Tr. 130).  On July 11, 2013, an administrative video hearing was held before Administrative Law Judge Michael Hazel ("ALJ").  (Tr. 14, 32-66).  Plaintiff and her attorney, Brian Sisto, appeared at the hearing, and Plaintiff testified before the ALJ.  (*Id.*).  Plaintiff is also represented by attorney Thomas C. Newlin, who did not appear at the hearing.  (Tr. 14).  A vocational expert ("VE"), Eric W. Pruitt, also appeared and testified.  (Tr. 14, 32-66).  On August 9, 2013, the ALJ issued a decision finding Plaintiff was not disabled.  (Tr. 14-26).  After applying the five-step sequential analysis,[1] the ALJ determined Plaintiff retained the

---

[1] The Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a determination as to "disability."  *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). The Sixth Circuit has summarized the five steps as follows:

(1)  If a claimant is doing substantial gainful activity–i.e., working for profit–she is not disabled.

(2)  If a claimant is not doing substantial gainful activity, her impairment must be severe before she can be found to be disabled.

(3)  If a claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and her impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.

(4)  If a claimant's impairment does not prevent her from doing her past relevant work, she is not disabled.

(5)  Even if a claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that accommodates her residual functional capacity and vocational factors (age, education, skills, etc.), she is not disabled.

*Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990); *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001).

ability to perform work existing in significant numbers in the national economy.  (*Id.*).

Subsequently, Plaintiff requested review of the ALJ's decision from the Appeals Council.  (Tr.

7-9).  The Appeals Council denied her request for review, making the ALJ's August 9, 2013,

determination the final decision of the Commissioner. (Tr. 1-3).  Plaintiff now seeks judicial

review of the ALJ's final decision pursuant to 42 U.S.C. §§ 405(g) and 1383(c).

## II. EVIDENCE

### A.  Personal Background Information

Plaintiff was born on September 7, 1975 and was 35 years old on the alleged onset date.

(Tr. 67).  Plaintiff completed high school and has past work experience as a nurse's aide, a

supervisor at a K-mart, a stacker/packer, and in food service, including working at a pizza

restaurant and a catering service.  (Tr. 40-41, 72).  Plaintiff lives in an apartment and has two

children, ages 12 and 14, one of which lives with her, the other visits every other weekend.  (Tr.

51-52).

### B. Medical Evidence[2]

*Mental Impairments*

On July 28, 2011, social worker Angel Lombardo performed a History and Physical

assessment relating to Plaintiff's mental health complaints of feeling sad, depressed, and

irritable, as well as problems with insomnia and constantly feeling tired.  (Tr. 327-28).  Plaintiff

completed an anxiety assessment and patient health questionnaire which showed she was mildly

anxious and currently experiencing depression. (Tr. 327).   Ms. Lombardo's notes showed

Plaintiff reported a history of depression, current mild feelings of sadness, but showed

appropriate mood and insight.  (Tr. 327-28).  Plaintiff was assessed with major depression

---

[2] The following recital of Plaintiff's medical record is an overview of the medical evidence pertinent to
Plaintiff's appeal.  It is not intended to reflect all of the medical evidence of record.

(recurrent) and given a global assessment functioning (GAF) score of 61-70, with Ms. Lombardo noting some mild symptoms or some difficulty in social, occupational, or school functioning, but generally doing well.  (Tr. 328).  Plaintiff also made general complaints about her stressful living situation, and referred to problems with black mold in her bedroom.  (Tr. 327).

Plaintiff again saw Ms. Lombardo on August 18, 2011, for a follow-up, and reported as her chief complaint that trazodone was not helping her insomnia.  (Tr. 329, 333).  Treatment notes revealed continued complaints of moderate depression, anxiety, and irritability, but that Plaintiff felt she was able to care for herself.  (*Id.*).  Plaintiff was assessed as having generalized anxiety disorder and insomnia, and Ms. Lombardo noted Plaintiff expressed she believed her insomnia was triggered by worry that she won't be able to sleep, and anxiety due to the mold issue.  (Tr. 333).  On this date, assessments showed Plaintiff was not at all anxious, but currently depressed.  (*Id.*).  Plaintiff reported she had discontinued treatment for depression one year prior. (*Id.*).  Her mental status findings were normal and previous diagnoses were continued, with a treatment plan including individual psychotherapy, in an office or outpatient facility.  (Tr. 334). Additionally, Plaintiff was to continue trazadone for insomnia, with instructions to follow-up with her primary care physician in two weeks.  (*Id.*).

Plaintiff again returned at the request of her primary care physician on September 1, 2011, with ongoing complaints of insomnia not responding to medication, irritability, and episodes of depression.  (Tr. 404).  Assessments again showed Plaintiff was currently depressed, with mild feelings of sadness, but was not at all anxious, despite reporting feelings of depression and anxiety.  (*Id.*).  Notes indicated Plaintiff had moved into a new home with no mold problems, but her sleep issues had not improved. (*Id.*).  Plaintiff's previous diagnoses and treatment plan were continued.  (Tr. 405).  An evaluation report from a follow-up appointment

4

on November 23, 2011, showed the same findings, except that an assessment showed Plaintiff was mildly anxious, and that her mood had improved.  (Tr. 402-403).

Plaintiff was again assessed by Ms. Lombardo on February 10, 2012, resulting in the continuation of her previous diagnoses, as well as Plaintiff's report that she had a history of seizure disorder since childhood, and was experiencing increased seizures due to her uncontrolled insomnia.  (Tr. 474).  Assessments showed she was depressed and mildly anxious, and that medication for her mood disorder was not working.  (*Id.*).  Her treatment plan of psychotherapy and medication was continued.  (Tr. 475).  A follow-up assessment on February 24, 2012, with social worker Daphne Lindo was essentially identical, except the assessment revealed moderate anxiety and a reduction in seizures.  (Tr. 487).  On May 7, 2012, Plaintiff reported to Mr. Lombardo that her anxiety had subsided upon taking clonidine, and that Ambien was helping her sleep.  (Tr. 499).  Further, she stated she was unable to walk long distances due to COPD and experiencing shortness of breath, but that her primary care physician had denied her request for a handicapped parking tag.  (*Id.*).  At that time, Ms. Lombardo again assessed Plaintiff with a mood disorder and continued her GAF score of 61-70.  (Tr. 500).

Plaintiff was referred to South Main Street Community Mental Health Center ("Main Street") by her primary care practitioner, Staci Melvin, CNP.  (Tr. 643).  A diagnostic assessment conducted on March 22, 2012 by social worker Patricia Hampshire resulted in a preliminary diagnosis of major depression and panic disorder with agoraphobia, after Plaintiff reported depressive symptoms, panic attacks, racing mind, and a fear of crowds and people.  (Tr. *Id.*).  Evaluation notes showed Plaintiff reported good relationships with her son and neighbor, as well as with her boyfriend of two years, but strained relationships with other family members.

(Tr. 629-32).   Ms. Hampshire noted Plaintiff exhibited cooperative behavior, average eye contact, average and clear speech, full affect, and normal mood with mild anxiety.  (Tr. 642).

On April 24, 2012, Jonathan Sirkin, M.D., conducted a psych intake and evaluated Plaintiff at South Main Street.  (Tr. 733).  Dr. Sirkin reviewed the diagnostic assessment with Plaintiff, and noted she has chronic depression, panic attacks that are worse in social situations and public places, low energy, and problems sleeping (although Ambien helped).  (*Id.*).  His evaluation notes also indicated treatment for seizure disorder, with her last seizure four months earlier.  (*Id.*).  Dr. Sirkin noted  Plaintiff as cooperative and exhibiting average eye contact, clear speech, full affect, and logical thought process, and diagnosed her with recurrent depression and agoraphobia with panic disorder.  (Tr. 737-39).  The intake report listed moderately severe problems relating to Plaintiff's financial condition, limited social support, and reports of past sexual abuse.  (Tr. 739).

Plaintiff continued counseling treatment at South Main Street from May 2012 through April 2013.  (Tr. 622-741).  Treatment notes showed consistent diagnoses of major depressive disorder and agoraphobia with panic disorder, as well as reports of anxiety, and GAF scores of 60.  (Tr. 705, 710-11, 717, 729-30, 738-39).  In May 2012, Plaintiff reported she left a friend at the dentist's office because there were too many people in the waiting room, that she had left a doctor's appointment the previous day because she felt a panic attack coming on, and that she had difficulty attending her son's concerts.  (Tr. 688, 691).

On June 14, 2012, counseling records noted Plaintiff's anxiety prevented her from being active, but that she had gotten a dog to help her stay active.  (Tr. 626-27).  Notes from a June 28, 2012 follow-up appointment reported Plaintiff was making efforts to do more things with her son, but that she propped the office door because she was afraid someone might come in.  (Tr.

698).  On September 6, 2012, Plaintiff reported she continued to isolate herself from others, but that she attended her son's school orientation.  (Tr. 703).  At this appointment Plaintiff was able to keep the door closed during her counseling session for the first time.  (Tr. 704).  In December of 2012, Plaintiff reported heightened anxiety, but said she had been off her medication for two weeks, and thought the medication was effective when she was taking it.  (Tr. 710-12).  In March 2013, Plaintiff complained of heightened anxiety in crowded waiting rooms, and reported that she was able to go watch her son play in sporting events, but did not interact with the other adults in attendance.  (Tr. 718, 726).

*Physical Impairments (Respiratory)*

Plaintiff presented to her primary caregiver, Staci Melvin, CNP, on March 11, 2011 complaining of three days of chronic cough and congestion.  (Tr. 305-08).  She admitted she was a smoker and had an intermittent cough for the past month.  (Tr. 305).  A chest X-ray showed normal findings, and on examination, Plaintiff exhibited unlabored breathing and had normal breath sounds except for bilateral rhonchi in bases.  (Tr. 307).  Ms. Melvin assessed Plaintiff with acute bronchitis and cough, and prescribed her medication with no refills.  (*Id.*).

Two days later, on March 13, 2011, Plaintiff presented at the hospital for further treatment, where examination showed mildly decreased breath sounds bilaterally in bases, but no rales, rhonchi, or wheezes, and another X-ray again showed normal results.  (Tr. 361-66).  Plaintiff was again diagnosed with acute bronchitis, provided an inhaler, and discharged in good condition with instructions not to work for two days.  (Tr. 361-62, 366).  Plaintiff returned to the hospital on March 17, 2011, complaining of cough producing yellow sputum and vomiting with blood-tinged emesis.  (Tr. 373).  She reported "a little bit" of shortness of breath, no chest pain, and on examination her lungs were course but otherwise normal.  (Tr. 373-74).  Again diagnosed

with acute bronchitis, Plaintiff was discharged in stable condition with no respiratory distress. (Tr. 374).

At a follow-up appointment with Ms. Melvin on March 29, 2011, Plaintiff denied any shortness of breath, wheezing, or cough, and requested a release to return to work.  (Tr. 309-12). Examination showed unlabored breathing and normal breath sounds.  *Id.*  Plaintiff further denied feeling of depression or anxiety.  *Id.*  Two months later, on May 31, 2011, Plaintiff again presented to the emergency room with complaints of lower back pain due to a pulled muscle, and a non-productive cough.  (Tr. 380-81).  Her medical chart indicated she smokes a pack of cigarettes a day.  (Tr. 381).  A chest X-ray revealed no acute pulmonary findings.  (Tr. 383).

Plaintiff returned to Ms. Melvin on July 7, 2011, complaining of dull throat pain, shortness of breath, and cough, and again on July 14, 2011, for spirometry testing.  (Tr. 313-26, 318-19).  The test could not be performed because Plaintiff failed to not smoke for four hours prior to the test, but it was performed the following week, with results indicating no need for further evaluation.  (Tr. 318, 320-21, 323).  On July 28, 2011, Plaintiff stated she coughed at night but was not using her albuterol inhaler, and examination showed unlabored breathing and normal breath sounds.  (Tr. 323-25).  At a follow-up appointment on August 18, 2011, Plaintiff reported her cough only emerged when she was lying down in her bedroom at night, and that she had black mold in her room.  (Tr. 329-30).  Imaging studies in September and October of 2011 showed Plaintiff had a stable chest with no evidence of cardiopulmonary disease, and no significant paranasal sinus disease.  (Tr. 388, 401).  Plaintiff used her inhaler to treat her cough, which notes indicated was better in November 2011; at that time she reported she was smoking less and requested a nicotine replacement.  (Tr. 402-15, 417-19).

Plaintiff was referred to pulmonary specialist Joseph N. Anigbogu, M.D., F.C.C.P., to evaluate her complaints of shortness of breath, wheezing, and cough.  On November 17, 2011, Dr. Anigbogu noted Plaintiff stated she was able to exercise, but could not walk a block or up a flight of stairs.  (Tr. 459).  On examination, Dr. Anigbogu found decreased air exchange at the base of her lungs with expiratory wheezes, but clear lungs to auscultation with normal resonance and no rales or rhonchi.  (Tr. 460).  Plaintiff was diagnosed with COPD, prescribed inhalers, and counseled to stop smoking.  (Tr. 459-60).  At a follow-up appointment on December 22, 2011, despite continued complaints of shortness of breath, wheezing, and cough, Plaintiff reported she was able to exercise, could walk a block and up a flight of stairs, but will stop to rest when she gets short of breath.  (Tr. 456-57).  Her treatment plan was continued, as it was again on May 24, 2012.  (Tr. 453-55, 458).

On July 9, 2012, Plaintiff presented to Dr. Anigbogu with complaints of wheezing and shortness of breath "all the time."  (Tr. 450).  He noted her pulmonary function test supported severe obstructive airway disease, and continued her treatment plan but adjusted her inhalers. (Tr. 450-52).  Dr. Anigbogu included in her treatment plan that she had severe COPD and was "unable to undertake any significant activity," and advised Plaintiff to follow up in three months. (Tr. 452). Plaintiff returned to Dr. Anigbogu on January 3, 2013, and his relevant findings were essentially identical to those from July of 2012.  (Tr. 447-49).  Her treatment plan was continued, and Plaintiff was advised to follow-up in six months.  (Tr. 449).

C.  <u>State Agency Consultants</u>

State Agency psychiatrist Young Wung Rhee, M.D., evaluated Plaintiff on February 1, 2012.  (Tr. 427-30).  In addition to his own evaluation, Dr. Rhee reviewed the notes from Plaintiff's treatment history at the Lima Community Health Center.  Plaintiff's chief complaint

was depression, reporting she had been depressed since 2008.  (Tr. 427).  Plaintiff also told Dr. Rhee she was unable to work due to breathing problems, and that she had been a good worker while previously employed, but was terminated due to her physical ailments.  (Tr. 427-28).  Dr. Rhee gave Plaintiff a GAF score of 60, indicating moderate symptoms, and gave the opinion that she had no significant limitations in her ability to relate to others, including co-workers and supervisors.  (Tr. 429).  Additionally, Dr. Rhee opined Plaintiff had no limitations in her ability to maintain attention to perform simple, repetitive tasks, as well as to understand and follow instructions, but had moderate impairment in withstanding work stress and pressure due to her depression and COPD.  (Tr. 429-30).  Dr. Rhee further concluded Plaintiff had a mild impairment dealing with the public.  (Tr. 430).

The record was reviewed on February 9, 2012, by State Agency non-examining consultant Aracelis Rivera, Psy.D.  (Tr. 90-95).  Dr. Rivera opined that Plaintiff had mild limitations in daily living activities and maintaining social functioning, moderate limitations in maintaining concentration, persistence, or pace, and had no extended episodes of decompensation.  (Tr. 90).  According to Dr. Rivera, Plaintiff remained capable of performing simple and multiple one-to-five step tasks that were routine and not fast-paced, and could function in a static work setting with moderate difficulties handling work-related stress and pressure.  (Tr. 94-95).  Her opinion reflected that Plaintiff could work in settings that did not require constant interaction with the public.  (Tr. 95).

On October 1, 2011, state agency consultant Rachel Rosenfeld, M.D. reviewed the record and provided her opinion as to Plaintiff's physical functional limitations.  (Tr. 70-72).  In relevant part, Dr. Rosenfeld opined that Plaintiff should avoid concentrated exposure to irritants such as fumes, odors, dusts, gases, and poor ventilation.  (Tr. 72).  Dr. Rosenfeld noted Plaintiff

had recently suffered from acute persistent episodes of cough and some shortness of breath that was treated with inhalers, which she indicated was considered in formulating her opinion. ( *Id.*). Her summary included a notation that Plaintiff was at risk for COPD due to smoking, but, despite reported shortness of breath, had normal lung findings and normal chest X-ray. (*Id.*). On February 13, 2012, another state agency consultant, Diane Manos, M.D., reviewed the record, and confirmed the above opinion of Dr. Rosenfeld. (Tr. 92-93).

### III. SUMMARY OF THE ALJ'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since March 20, 2011, the alleged onset date.

3. The claimant has the following severe combination of impairments: dextroconvex curvature of the thoracic spine, with hypertrophic spurring; obstructive airways disease/chronic obstructive pulmonary disease; a history of irritable bowel syndrome; gastroesophageal reflux disease; diabetes mellitus; migraine headaches; obesity; major depression; and an anxiety disorder.

4. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a). The claimant: can lift and/or carry 20 pounds occasionally and 10 pounds frequently; can stand and/or walk two hours and sit six hours in an eight-hour workday, with normal breaks; can push and/or pull consistent with the lifting limitations; should never climb ladders or scaffolds, but can occasionally climb ramps or stairs; can occasionally stoop, kneel, crouch, or crawl; should avoid all exposure to extreme noise; should be exposed to irritants such as fumes, odors, dust, gases and poorly ventilated areas less than one-third of the workday; is limited to simple, routine, and repetitive tasks with up to three steps; requires a low stress work environment with only occasional decision-making, occasional changes in the work setting, and no strict quota requirements; can occasionally interact with the public; and can frequently interact with co-workers and supervisors.

6. The claimant is unable to perform any past relevant work.

7.  The claimant was born on September 7, 1975, and was 35 years old, which is defined as a younger individual age 18-44, on the alleged disability onset date.

8.  The claimant has at least a high school education and is able to communicate in English.

9.  Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills.

10.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11.  The claimant has not been under a disability, as defined in the Social Security Act, from March 20, 2011, through the date of this decision.

(Tr. 16-25).

## IV. DISABILITY STANDARD

A claimant is entitled to receive Disability Insurance and/or Supplemental Security Income benefits only when she establishes disability within the meaning of the Social Security Act.  *See* 42 U.S.C. §§ 423, 1381.  A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months."  *See* 20 C.F.R. §§ 404.1505, 416.905.

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to a determination of whether, based on the record as a whole, the Commissioner's decision is supported by substantial evidence, and whether, in making that decision, the Commissioner employed the proper legal standards. *See Cunningham v. Apfel*, 12 F. App'x 361, 362 (6th Cir. 2001); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984); *Richardson v. Perales*, 402 U.S. 389, 401 (1971). "Substantial evidence" has been defined as more than a scintilla of evidence but less than a

preponderance of the evidence.  *See Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Id.*

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this Court would resolve the issues of fact in dispute differently or substantial evidence also supports the opposite conclusion.  *See Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986); *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).  This Court may not try the case de novo, resolve conflicts in the evidence, or decide questions of credibility.  *See Garner*, 745 F.2d at 387.  However, it may examine all the evidence in the record in making its decision, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241, 245 (6th Cir. 1989).

## VI.  ANALYSIS

### A.  The ALJ's classification of Plaintiff's diagnosed condition of Panic Disorder with Agoraphobia was harmless error and does not require remand

Plaintiff asserts that the ALJ erred at step two because his determination that Plaintiff did not have a medically determinable impairment of agoraphobia with panic disorder was based on a clear mistake of fact.  Specifically, the ALJ reasoned he made this determination because the condition had not been diagnosed by an acceptable medical source.  However, as Plaintiff argues, and the government concedes, the record shows Dr. Sirkin unmistakably diagnosed Plaintiff with agoraphobia with panic disorder on April 24, 2012.  (Tr. 733, 739).  Because, by definition, the ALJ need not consider conditions that are not medically determinable when formulating a claimant's RFC,  Plaintiff argues remand is necessary to determine Plaintiff's RFC with due consideration to limitations caused by her agoraphobia and panic disorder.

13

The second step in the sequential analysis requires an ALJ to determine the existence and severity of a claimant's alleged impairments, classifying them as severe or non-severe. *See Anthony v. Astrue*, 266 Fed. Appx. 451, 457 (6th Cir. 2008). At this step, the claimant has the burden to show that he has an impairment which significantly interferes with his ability to do basic work activities. *Id.*; *see* 20 C.F.R. §§ 404.1520(c), 416.920(c). The ALJ's ruling here is viewed under a *de minimus* standard. *Id.* (*quoting Higgs v. Bowen*, 880 F.2d 860, 862 (6th Cir. 1998)). Accordingly, a claimant's impairment will only be construed as non-severe when it is a "slight abnormality that minimally affects work ability regardless of age, education and experience." *Id.* (*quoting Higgs*, 880 F.2d at 862). An alleged impairment that is not supported by evidence from an "acceptable medical source" pursuant to 20 C.F.R. § 404.1513 is not a medically determinable impairment and need not be considered. *See* 20 C.F.R. § 404.1520(a)(4); *see generally Boulis-Gasche v. Comm'r of Soc. Sec.*, 451 Fed. Appx. 488, 492 (6th Cir. 2011) ("[W]ith regard to step two, the Act defines a 'physical or mental impairment' as 'an impairment that results from anatomical, physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques'…and 'must have lasted or be expected to last for a continuous period of at least 12 months.'") (*citing* 42 U.S.C. § 423(d)(3), 20 C.F.R. § 404.1509).

An ALJ's failure to properly assess a claimant's impairments at step two will not always necessitate remand where it is shown that the error was harmless. A court may find harmless error where "remand would be an idle and useless formality," and a failure to remand will not cause the claimant to be "prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapse." *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009). The *Rabbers* court additionally determined that the application of the harmless error standard is

more likely appropriate where the error involved a regulation that constituted an "adjudicatory tool" "'adopted for the orderly transaction of business' before the SSA—as opposed to a regulation 'intended primarily to confer important procedural benefits upon claimants.'" *Id.* at 656 (holding harmless error appropriately considered where the ALJ failed to assign a score to each of the "B" criteria at step two, finding the regulation was "designed to aid the SSA in determining the severity of a claimant's [] impairment[s]" and the language of the regulation itself was worded in terms of the procedure's benefit to the SSA).

Application of the harmless error standard at step two is appropriate.  The Sixth Circuit acknowledged that step two is used as a screening tool for the SSA, permitting ALJs to dismiss "totally groundless" claims at an early stage in the analysis.  *Higgs*, 880 F.2d at 863 (finding "the severity requirement may still be employed as an administrative convenience to screen out claims that are 'totally groundless' solely from a medical standpoint.") (*quoting Farris v. Sec'y of Health & Human Servs*., 773 F.2d 85, 89 (6th Cir. 1985); *Anthony*, 266 Fed. Appx. at 457 ("The goal of the [severe impairment] test is to 'screen out totally groundless claims.'") (*quoting Farris*, 773 F.2d at 89).  Further, courts have consistently found analytical failings at step two constituted harmless error where the ALJ found at least one severe impairment, and then "considers all of a claimant's impairments in the remaining steps of the disability determination.";  *Fisk v. Astrue*, 253 Fed. Appx. 580, 583 (6th Cir. 2007); *Anthony*, 266 Fed. Appx. at 457 (finding it legally irrelevant that some of claimant's impairments were not deemed "severe" at step two where some impairments were deemed severe, and the ALJ considered both severe and non-severe impairments in the remaining steps of his analysis).

Plaintiff argues she was materially prejudiced by the ALJ's erroneous finding that her diagnosed agoraphobia with panic disorder was not a medically determinable impairment.

Under the harmless error standard, the party seeking to have the judgment set aside bears the burden of showing that prejudice resulted from an erroneous ruling. *Shinseki v. Sanders*, 556 U.S. 396, 407-11 (2009); *see Salter v. Comm'r of Soc. Sec.*, N.D. Ohio No.4:12-cv-888, 2015 WL 1880393, at *9 (Apr. 24, 2015) (finding ALJ's erroneous analysis of medical opinion constituted harmless error where claimant had not "demonstrated that she was otherwise prejudiced by the ALJ's analysis.").  In support, Plaintiff points to the regulations, which state that an ALJ will consider all of a claimant's medically determinable impairments when formulating an RFC, including those impairments that are not severe. 20 C.F.R. § 404.1545(a). She further asserts that, because her agoraphobia with panic disorder was designated as neither severe nor non-severe, no consideration was given to the limitations caused by this impairment when the ALJ determined her RFC. (Plaintiff's Brief pp. 9-10.).  Remand would thus be necessary, according to Plaintiff, because the "RFC does not represent an accurate depiction of Ms. Hobson's functional capabilities and limitations." (Plaintiff's Brief, p. 10).

Contrary to Plaintiff's contention, the ALJ considered all the evidence of record, including evidence relating to limitations that were associated with agoraphobia with panic disorder, in his mental RFC analysis.  Because the ALJ found Plaintiff had severe impairments of depression and anxiety, he was then required to consider all the relevant evidence relating to Plaintiff's mental impairments and symptoms. *See* 20 C.F.R. § 404.1545(a) (A claimant's RFC is "based on all the relevant evidence in [the] case record.").  Despite not recognizing her agoraphobia with panic attacks as a medically determinable impairment, the ALJ nonetheless clearly considered substantial record evidence relating to those conditions and, consistent with the opinion evidence regarding her mental functional abilities, accommodated any resulting

restrictions by limiting Plaintiff to only occasional interactions with the public and frequent interactions with co-workers and supervisors in a low stress work environment.  (Tr. 20).

In his decision, the ALJ acknowledged, based on her testimony and treatment records, that Plaintiff suffered from panic attacks and preferred to stay at home, but found that she was capable of leaving home when necessary.  (Tr. 17, 23).  The ALJ specifically pointed to Plaintiff's ability to leave her home on a daily basis to take her children to school, and that she attended medical and other appointments, as well as took trips to the grocery store when needed.  (Tr. 18-20, 23).  Also considered was Plaintiff's GAF scores ranging from 57-70, which is consistent with moderate to mild symptoms.  (Tr. 23).  Further, the ALJ noted that Plaintiff consistently reported to treatment providers that she had difficulty being around other people and avoided crowds, but that, although Plaintiff had a tendency to isolate in group settings, she admitted she was capable of being comfortable around people she knows.  (Tr. 18-19, 23).

Also significant is that the ALJ considered, and gave substantial weight to, the opinions of state agency consultants Young Wung Rhee, M.D., who examined Plaintiff, and Aracelis Rivera, Psy.D.  (Tr. 23).  Both consultants examined the record evidence and based their opinions on Plaintiff's treatment notes and history up through February of 2012.  (Tr. 86-95). Dr. Rhee concluded that Plaintiff had no significant impairment in her ability to relate to others, including co-workers and supervisors, and only a mild impairment in dealing with the public. (Tr. 429-30).  Dr. Rivera found that, although she would have moderate difficulty dealing with work stress and pressure, Plaintiff remained capable of performing multiple-step tasks in a static work setting that did not require "constant" interaction with the public.  (Tr. 94-95).  The undersigned recognizes that these opinions were determined prior to Plaintiff's April 2012 diagnosis of agoraphobia with panic disorder.  However, Plaintiff's symptoms and complaints

relating to this condition were generally consistent over the course of the treatment record. Plaintiff fails to point to any additional evidence on the record (beyond the diagnosis of agoraphobia with panic disorder, which did nothing more than put an additional name onto her already apparent symptoms) suggesting Plaintiff's mental impairments would require greater or additional limitations than those established by the state agency consultants. These opinions, which were appropriately considered and credited by the ALJ, are consistent with the limitations provided in the RFC for Plaintiff's mental functioning abilities.

Accordingly, the undersigned finds Plaintiff's argument that she was prejudiced by the ALJ's error at step two unpersuasive. Despite the ALJ's failure to recognize her agoraphobia with panic disorder as a medically determinable impairment, the ALJ's decision fully considered the evidence relating to that impairment, and accounted for it in the RFC. Plaintiff does not produce any authority to show that failing to articulate consideration of specifically named impairments, despite performing a full analysis of the evidence relevant to those conditions, is anything more than harmless error. *See generally Hill v. Comm'r of Soc. Sec.*, 560 Fed. Appx. 547, 551 (6th Cir. 2014) (finding no error where claimant did not persuasively show that failure to include PTSD as severe impairment would have changed ALJ's assessment of functional limitations, stating "disability is determined by the functional limitations imposed by a condition, not the mere diagnosis of it."); *see generally Griffith v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007) ("The RFC describes 'the claimant's residual abilities or what a claimant can do, not what maladies a claimant suffers from….'") (*quoting Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235 (6th Cir. 2002)). Further, Plaintiff fails to point to any evidence on the record that was not considered by the ALJ that supports her argument that the limitations

provided in the RFC relating to her mental impairments would not adequately account for any credible limitations imposed by her agoraphobia with panic disorder.

Plaintiff has thus failed to meet her burden to show the ALJ's failure to deem her agoraphobia with panic disorder as a medically determinable impairment at step two was anything more than harmless error. Accordingly, the Court rejects Plaintiff's argument that remand is necessary on this issue.

**B. The ALJ's rejection of the State Agency Medical Consultants' environmental limitations was a proper use of the ALJ's discretion and is supported by substantial evidence.**

Plaintiff argues that the ALJ committed reversible error by failing to incorporate the environmental limitations proposed by the state agency medical consultants to account for Plaintiff's respiratory impairments in the RFC. The two state agency consultants[3] opined that Plaintiff should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation. (Tr. 71-73, 80-81, 93, 106). Rather than adopting the stringent limitation, the ALJ found Plaintiff's respiratory impairments were sufficiently accounted for by limiting her to exposure to such irritants for no more than one-third of the workday. (Tr. 24).

Before moving to the fourth step in the sequential evaluation process, the ALJ must assess the claimant's RFC. 20 C.F.R. §§ 404.1520(e), 416.920(e). The claimant's RFC signifies the claimant's remaining capacity to engage in work-related physical and mental activities despite functional limitations from the claimant's impairments. 20 C.F.R. §§ 404.1545, 416.945; *see also Cohen v. Sec'y of Health & Human Servs.*, 964 F.2d 524, 530 (6th Cir. 1992). "Although physicians opine on a claimant's residual functional capacity to work, ultimate

---

[3] Plaintiff incorrectly states in her brief that the ALJ improperly disregarded the opinions of four state agency consultants that Plaintiff should avoid all concentrated exposure to fumes, odors, dusts, gases, and poor ventilation, but in actuality opinions were only provided by two state agency medical consultants regarding her physical ailments: Dr. Manos and Dr. Rosenfeld. (Tr. 71-73, 80-81, 93, 106).

responsibility for capacity-to-work determinations belongs to the Commissioner." *Nejat v. Comm'r of Soc. Sec.*, 359 F. Appx. 574, 578 (6th Cir. 2009) (*citing* 20 C.F.R. § 404.1527(e)(1)). Thus, it is ultimately the ALJ's responsibility to analyze the medical opinion evidence and determine Plaintiff's RFC. While there may be evidence supporting a more restrictive RFC assessment, the ALJ's ruling must be upheld where adequate evidence supports it. *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007) ("If the ALJ's decision is supported by substantial evidence, then reversal would not be warranted even if substantial evidence would support the opposite conclusion.") (*citing Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005)).

If a medical source's opinion contradicts the ALJ's RFC finding, an ALJ must explain why certain limitations were excluded from a claimant's RFC. *See, e.g., Fleischer v. Astrue*, 774 F. Supp. 2d 875, 881 (N.D. Ohio 2011). Social Security Ruling 96-8p states: "The RFC assessment must always consider and address medical source opinions. If the RFC assessment conflicts with an opinion from a medical source, the adjudicator must explain why the opinion was not adopted." SSR 96-8p, 1996 WL 374184, *7 (July 2, 1996). However, the Sixth Circuit has recognized:

> "[O]pinions from nontreating and nonexamining sources are never assessed for 'controlling weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. *Id.* citing 20 C.F.R. § 404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* citing § 404.1527(c)(6).

*Beck-Patterson v. Colvin*, N.D. Ohio No. 14-cv-864, 2015 WL 2195066, at *9 (May 11, 2015). Accordingly, the ALJ is not required to give controlling weight to the opinions of state agency

consultants, and appropriately considers them along with all the relevant evidence of record when assessing a claimant's RFC.  *See id; see Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. Appx. 496, 508 (finding doctor's opinion not entitled to the presumptive weight accorded a treating physician's opinion because was "merely an examining physician.").

Here, the ALJ provided good reasons for accommodating Plaintiff's respiratory impairments by limiting her exposure to irritants to less than one-third of the work day, rather than no exposure, as suggested by the state agency consultants. First, the ALJ analyzed the general severity of Plaintiff's COPD based on both medical and non-medical evidence of record. The ALJ provided good reasons for affording little weight to the opinion of Plaintiff's treating doctor, Dr. Anigbogu, that Plaintiff was unable to undertake any significant activity due to her COPD, explaining the opinion "is vague and does not provide a quantifiable explanation of the claimant's abilities and limitations."  (Tr. 22)  Further, the ALJ determined the alleged extent of her respiratory impairments, including her claims as to the severity of chronic shortness of breath, were not consistent with treatment notes and medical history.  (Tr. 21-22)  Specifically, the ALJ noted that, contrary to Plaintiff's assertions, there was no medical proof that she required a walker due to her respiratory ailments, a claim that was initially undermined by Dr. Anigbogu's treatment notes stating Plaintiff was able to exercise, walk a flight of stairs, and walk a block. (Tr. 21)  The ALJ further discredited Plaintiff's claims of worsening respiratory symptoms because Plaintiff consistently required no greater treatment beyond an inhaler, and, despite some abnormal findings from a pulmonary function test performed in January 2013, Dr. Anigbogu did not change or increase her treatment.  (Tr. 21-22)  The ALJ also pointed out that Dr. Anigbogu's treatment notes did not show additional findings that would suggest Plaintiff's condition had worsened.  (Tr. 22).

In light of the his evaluation of her COPD and respiratory symptoms, the ALJ reasonably concluded that limiting Plaintiff's exposure to environmental irritants to less than one third of the workday sufficiently accounted for Plaintiff's respiratory impairments.  Regarding the opinion evidence, the ALJ clearly established he gave only limited weight to the opinions of state agency consultants Drs. Rosenfeld and Manos, including their opinions that Plaintiff should avoid all concentrated exposure to respiratory irritants.  (Tr. 23-24).  Based on his preceding analysis, the ALJ specifically explained that, while he agreed Plaintiff's exposure should be limited, "a limitation to no more than one-third of the workday is more consistent with the claimant's severe obstructive airways disease and related symptoms."  (Tr. 24).

Plaintiff's argument that the ALJ's decision to reject the medical opinions of the state agency consultants amounted to the ALJ inappropriately taking on the role of a doctor is unpersuasive.  "An ALJ does not improperly assume the role of a medical expert by assessing the medical and nonmedical evidence before rendering a residual functional capacity finding." *Poe v. Comm'r of Soc. Sec*., 342 Fed. Appx. 149, 157 (6th Cir. 2009).  As discussed above, the ALJ gave good reasons, supported by the record, for his assessment of Plaintiff's environmental limitations due to her COPD.  Thereafter, the ALJ properly exercised his discretion when he did not fully credit the opinions of the state agency consultants Drs. Rosenfeld and Manos, based on his consideration of the evidence of record.  *See generally id*. at 156-57; *see generally Brooks v. Comm'r of Soc. Sec*., 531 Fed. Appx. 636, 642 ("Generally, more weight is given to opinions that are 'more consistent…with the record as a whole.'").  Plaintiff fails to point to any evidence not properly considered by the ALJ, and her attempts to re-argue her case on appeal are insufficient because the ALJ's discretionary determinations are supported by substantial evidence.  Accordingly, remand is not appropriate.

## VII. DECISION

For the foregoing reasons, the Magistrate Judge finds that the decision of the Commissioner is supported by substantial evidence. Accordingly, the undersigned recommends that the decision of the Commissioner be AFFIRMED


s/ Kenneth S. McHargh
Kenneth S. McHargh
United States Magistrate Judge


Date:  January 19, 2016.


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1).  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).